UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES B. UDOH,

                         Plaintiff,

             – against –

NEW YORK CITY DEPARTMENT OF
PROBATION, NATASHA SEGERS,
MARYANN BROWN, LISA
D'AMBROSIA,

                         Defendants.

**OPINION & ORDER**

24-cv-03982 (ER)

RAMOS, D.J.:

      Charles B. Udoh, proceeding *pro se*, filed this action against the New York City
Department of Probation ("DOP"), Natasha Segers, Maryann Brown, and Lisa
D'Ambrosia on May 17, 2024, alleging that the DOP discriminated against him on the
basis of race, color, religion, sex, national origin, age, and disability.  Doc. 1 at 3–4.
Before the Court is DOP's motion to partially dismiss the complaint pursuant to Federal
Rule of Civil Procedure 12(b)(6).  Doc. 26.  For the reasons set forth below, the motion is
GRANTED in part and DENIED in part.

I.      **BACKGROUND**

      The Court accepts the factual allegations in the complaint as true for purposes of
the instant motion.  *In re Parmalat Securities Litigation*, 477 F. Supp. 2d 602, 607
(S.D.N.Y. 2007).  And "in deciding a motion to dismiss a *pro se* complaint, it is
appropriate to consider materials outside the complaint to the extent that they are
consistent with the allegations in the complaint[.]"  *Rivera v. Royce*, No. 19 Civ. 10425
(PMH), 2021 WL 2413396, at *5 n.2 (S.D.N.Y. June 11, 2021) (quoting *Davis v. County
of Suffolk*, No. 18 Civ. 303 (JMA) (AKT), 2020 WL 7699919, at *4 (E.D.N.Y. Oct. 30,
2020)).

Udoh is a fifty-eight-year-old Black male from Nigeria, Africa who began working for the DOP as a probation officer on September 12, 2022. Doc. 1 at 8; Doc. 30 at 2. He was initially placed at a location in the Bronx temporarily, with plans to be assigned to Manhattan on a more permanent basis. Doc. 1 at 8. On his first day, he met Lisa D'Ambrosia, the head of the Bronx DOP, to whom he explained he was sent there only temporarily—through the week—to which she allegedly assented. *Id.* She told him he would first go to the intake unit and then to client development. *Id.* He would later allege that D'Ambrosia "was one of the people who caused the Plaintiff's termination and reputable harm." Doc. 30 at 4. On that first day he also met bureau chief Natasha Segers, the head of client development, and bureau chief Maryann Brown, his immediate supervisor. Doc. 1 at 8.

Over the next few days, while Brown was on vacation, Segers assigned Udoh forty cases and instructed him to begin his work, meet his clients, and visit them at their homes. *Id.* Udoh was given no equipment with which to do his work, and after weeks of being "overworked, overwhelmed, and very stressed," he reached out to Segers who reassured him that he should continue his work, that she was monitoring him, and that he was doing a "great job." *Id.* at 8–9. From that day on, Udoh alleges he was "harassed every day," "denied late lunch breaks due to his medication," threatened with termination, denied overtime, deducted pay for taking a lunch break, denied work assignments, denied transfer to another unit, denied accommodations for medical and "African religion fasting and practices," spat at, poked in the chest, and yelled at. *Id.* at 9–11.

Segers once told him to do as she said, and if he continued to listen to the other officers she would make sure he did not make it through the year. *Id.* at 10. He was constantly denied overtime, even after submitting requests both orally and in writing. *Id.* All of the other probation officers received overtime when requested. *Id.* Udoh alleges that he was frequently left alone in the building from 1 pm to 10 pm on Wednesdays and

Saturdays—the same days on which he had requested to take late lunches due to medical reasons and religious practices. *Id.* at 11. He also claims that most other officers left by 8 pm. *Id.* He was often left alone inside his office which had become infested with rats and mice. *Id.* When Udoh complained about the rats, Segers responded by telling him he was "making a big deal out of this" and asked "don't they have rats in Africa?" *Id.* at 12. At one point, Udoh was referred to as an "old African n-word," a "fucking lying old man," and other racial slurs, as well as being told: "I don't understand what you are saying, speak good English so I can hear you, I cannot understand your accent." *Id.* at 9. Udoh alleges that Segers and Brown also intentionally gave better work assignments to non-Black employees, expressly telling him that his national origin was the basis for their unjust treatment towards him. *Id.* at 11.

Udoh also claims he was targeted by his supervisors for something he never did. *Id.* at 12. Specifically, Probation Officer ("PO") Brown had asked Udoh to join her on a field visit, assuring Udoh that she had already spoken with her supervisor and Udoh's supervisor, Brown. *Id.* This was not the case, however. PO Brown's supervisor, Mr. Session, had only authorized the field visit for PO Brown's car/fab key.[1] *Id.* Udoh went on the field visit as requested, but was later reprimanded by his supervisors. *Id.* As a result, Segers called and asked him to sign a "memorandum" in the presence of Kory Blackwell.[2] *Id.* Meanwhile, PO Brown was not reprimanded or asked to sign any document. *Id.* Udoh refused to sign the memorandum because he believed what it stated was untrue, and Antoine Sherman[3] had asked him not to sign anything without him being there. *Id.* Udoh was not provided a union representative even though he paid union dues, and was not given time to file a grievance. *Id.* Later that day, Segers called Udoh inside her office, threatened him, and used abusive and racist language, calling him a "fucking

---

[1] Udoh does not explain what the "car/fab key" is.

[2] Udoh does not explain Kory Blackwell's role in the DOP.

[3] Udoh does not explain Antoine Sherman's role in the DOP.

n-word" and telling him to "get out of [her] office."  *Id.*  The following day she told

Udoh:  "fucking old man, you better look for another job; [I] will show you who is the

boss here, sign or not."  *Id.*

Udoh describes a similar situation in which he was allegedly called into Brown's

office to sign a memorandum which stated that he had failed to notify SPO of a field

visit.[4]  *Id.* at 9.  As he explained to Brown why he would not sign the document, he

alleges that Segers walked in and proceed to yell at him, point her fingers "in front of his

chest", spit in his face, and threaten to "take the matter higher if [he] refused."  *Id.*  After

that event, he "went straight to Mr. Shermans's office and reported what happened,"

begging Sherman to speak to Blackwell about his transfer from the unit or out of the

borough.  *Id.*

Udoh complained to Brown, Sherman, and Blackwell on multiple occasions.  *Id.*

He specifically alleges that he "complained to Ms. Brown many times about these

treatments," "complained to Mr. Antoine Sherman in his office over 8 times," and

"complained to Kory Blackwell in his office over 6 times; and inside the building, front,

and hallway over 6 times."  *Id.*  Blackwell told Udoh he would look into it, but nothing

ever came of that assurance.  *Id.* at 9–10.  Other officers advised him to request a transfer,

claiming that Segers and Brown would not stop until Udoh was either fired or forced to

quit.  *Id.* at 11.

As a result of the issues he was facing at work, Udoh alleges that he had to be

hospitalized.  *Id.* at 9.  In his opposition papers, he clarifies that he allegedly suffered

from high blood pressure, chest pain, back pain, anxiety, panic attacks, physical

disability, emotional distress, mental abuse, and cardiac issues.  Doc. 30 at 15.  Udoh

emailed Sherman many times before requesting, on June 6, 2023, to be transferred upon

his return from the hospital.  *Id.* at 9–10.  When he returned, he presented Brown,

---

[4] Udoh does not explain what "SPO" means.

Blackwell, and Sherman with his discharge papers.  *Id.* at 10.  The following day, Brown

called Udoh into her office and asked him to sign an evaluation.  *Id.*  He refused because

Sherman had told Udoh not to sign any documents without him present.  *Id.*  Segers and

Brown retaliated by writing to human resources to terminate Udoh's employment.  *Id.*

Udoh claims that on June 21, 2023, he was asked to bring in his work equipment and

informed that, based on his evaluation, he was being let go.  *Id.*  The DOP acknowledges

that June 21, 2023 was the day he was officially terminated, Doc. 26 at 13, which Udoh

confirms in his opposition by stating he was terminated on that day via email, Doc. 30 at

2.

On the day that he was terminated, a young female probation officer under the age

of forty took his office.  *Id.* at 10.  Furthermore, the DOP did not allow Udoh to clean out

his office, rather he was told to "pack and move out" or they would have armed officers

escort him out of the building.  *Id.*  Udoh alleges that Segers and the DOP hired new

probation officers under the age of forty, but does not specify how many they hired or

when they did so.  *Id.*

On January 18, 2024, Udoh filed a charge with the New York State Division of

Human Rights ("DHR") against the DOP for discrimination on the basis of age, religion,

disability, race, and national origin.  Doc. 26 at 39–50.  Udoh received a response to that

charge on July 8, 2024, and was given the opportunity to submit a rebuttal "in order to

further the investigation of [his] case."  Doc. 30 at 55.  The record before the Court does

not include a rebuttal by Udoh, nor does Udoh allege that he undertook any further efforts

to work with the DHR to further the investigation.

Meanwhile, on April 1, 2024, Udoh filed a charge with the Equal Employment

Opportunity Commission ("EEOC") for discrimination on the basis of disability, race,

national origin, and retaliation.  Doc. 26 at 34–37.

Finally, on May 17, 2024 Udoh filed the instant complaint alleging that the DOP

discriminated against him on the basis of disability, race, national origin, color, religion,

sex, and age.  *See generally* Doc. 1.  On December 18, 2024, the DOP filed the instant

motion to partially dismiss the complaint for failure to:  (1) exhaust the administrative

remedies for sex-based discrimination and retaliation claims; (2) state a cause of action

for sex, religion, and disability discrimination pursuant to Federal Rule of Civil

Procedure 12(b)(6); (3) plead a qualifying disability, discriminatory intent, or adverse

employment action based on his purported disability pursuant to the Rehabilitation Act

("RA"), Americans with Disabilities Act ("ADA"), New York State Human Right Law

("NYSHRL"), and New York City Human Right Law ("NYCHRL"); (4) establish that he

had a property interest in his employment with DOP and thus a claim under the

Fourteenth Amendment; (5) allege D'Ambrosio was personally involved in any alleged

unlawful treatment; and (6) show that the DOP is a suable entity.  *See* Doc. 26 at 12.[5]

## II.    LEGAL STANDARDS

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court accepts all

factual allegations in the complaint as true and draws all reasonable inferences in the

plaintiff's favor.  *See, e.g.*, *Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d

Cir. 2012).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual

allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-

me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.

v. Twombly*, 550 U.S. 544, 555 (2007)).  "[T]he tenet that a court must accept a

complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's

elements, supported by mere conclusory statements."  *Id.* at 663 (citing *Twombly*, 550

U.S. at 555).  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678

(quoting *Twombly*, 550 U.S. at 570).  This "plausibility standard is not akin to a

---

[5] Defendants are *not* moving to dismiss the race discrimination, national origin discrimination, age
discrimination, and hostile work environment claims.

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  To state a plausible claim, the plaintiff must "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d. Cir. 2018) (quoting *Twombly*, 550 U.S. at 556).  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

*Pro se* litigants' "pleadings and other filings are interpreted to raise the strongest claims they suggest." *See Sharikov v. Philips Medical System MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024) (citing *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–58 (2d Cir. 2017)).  In general, a court should not dismiss a *pro se* complaint without "granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).

## III.  DISCUSSION

### A.  New York City Department of Probation is Not a Suable Entity

The New York City Department of Probation is not a suable entity, and therefore, Plaintiff's claims against the DOP must be dismissed.  "[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law."  N.Y. City Charter Ch. 17 § 396; *Albritton v. Fredella*, No. 22 Civ. 4512 (AS), 2024 WL 3905270, at *5 (S.D.N.Y. Aug. 22, 2024) ("[F]ederal claims against the New York City Department of Probation must be dismissed because an agency of the City of New York is not an entity that can be sued."); *Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal

agency."). Accordingly, Defendants' motion to dismiss all claims against the DOP is granted.

### B. Plaintiff Failed to Exhaust Administrative Remedies

The Court finds that Udoh failed to exhaust his administrative remedies for his Title VII sex discrimination claim. "[E]xhaustion of administrative remedies through the EEOC stands as an essential element of Title VII's statutory scheme, and one with which defendants are entitled to insist that plaintiffs comply." *Gibb v. Tapestry, Inc.*, No. 18 Civ. 6888 (LAP), 2018 WL 6329403, at *3 (S.D.N.Y. Dec. 3, 2018) (quoting *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)). Accordingly, "alleging Title VII claims in an EEOC charge is a 'precondition to bringing such claims in federal court,' unless the claims are 'reasonably related' to claims that were alleged before the EEOC." *Grant v. United Cerebral Palsy of New York City, Inc.*, No. 11 Civ. 00018 (LGS), 2014 WL 902638, at *4 (S.D.N.Y. Mar. 7, 2014) (quoting *Legnani v. Alitalia Linee Aeree Italiane*, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001)).

When Udoh filed his EEOC complaint, he did not list sex discrimination as a claim he was pursuing. Thus, the only way he can bring that discrimination claim in federal court is if it is "'reasonably related' to the claim filed with the agency." *Williams v. New York City Housing Authority*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Butts v. City of New York Department of Housing Preservation and Development*, 990 F.2d 1397, 1401 (2d Cir. 1993), superseded by statute on other grounds.). "[A] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Id.* at 70 (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001)). "The central question is whether the EEOC would have had adequate notice to investigate both the discrimination mentioned in the EEOC complaint and the discrimination that was not mentioned in the EEOC complaint." *Edwards v. New York*

*State Unified Court System*, No. 12 Civ. 46 (WHP), 2012 WL 6101984, at *6 (S.D.N.Y. Nov. 20, 2012) (citing *Williams*, 458 F.3d at 70). [6]

The Court finds that the EEOC did not have adequate notice to investigate the sex discrimination claims. The EEOC charge makes no mention of "sex" at all. Udoh specifically alleges he was "discriminated against because of [his] race, national origin, disability, and retaliation for [his] complaints and oral and written requests for transfer," but did not include sex. Doc. 26 at 35. The only related reference he makes merely states that a "female young officer under the age of 40 took [his] office the day [he] was asked to return all [his] equipment." Doc. 26 at 35. That mention alone is insufficient to give the EEOC adequate notice to investigate a sex discrimination claim. *See Parker v. Israel Discount Bank of New York, Inc.*, No. 21 Civ. 7196 (VEC), 2022 WL 16833626, at *3 (S.D.N.Y. Nov. 9, 2022) ("[P]assing references to gender are inadequate."); *Holmes v. Fresh Direct*, No. 13 Civ. 4657 (NGG) (CLP), 2015 WL 4885216, at *6 (E.D.N.Y. Aug. 5, 2015) (holding that plaintiff failed to exhaust administrative remedies in regards to her sex discrimination claim as nothing in the EEOC charge "mention[ed] conduct related to her sex."). Accordingly, Udoh's Title VII sex discrimination claim must be dismissed for failure to exhaust administrative remedies. [7]

Although Defendants argue that Udoh's Title VII retaliation claims must also be dismissed for failure to exhaust administrative remedies, Doc. 26 at 16, Udoh *does* list retaliation as a basis of alleged discrimination in his EEOC charge, and specifically states that he was retaliated against for his complaints and transfer requests. Doc. 26 at 34–35. Accordingly, the motion to dismiss the retaliation claim on the basis of failure to exhaust must be denied.

---

[6] Udoh also failed to list religion as a basis for discrimination in his EEOC charge, but the Court finds that it is "reasonably related" to the claim filed with the agency as he specifically alleges a failure to accommodate on the basis of his religion in the charge. Doc. 1 at 10. Regardless, as discussed below, that claim fails on the merits in any event.

[7] In any event, Udoh also fails to sufficiently plead a Title VII sex discrimination claim.

Defendants also mention that Udoh "failed to check off on his []DHR charge that he was pursuing claims of sex discrimination and retaliation and makes no mention of any sex-based allegations in his charge."  Doc. 26 at 15.  To the extent they are seeking to dismiss those claims for failure to exhaust administrative remedies, the Court must deny because the "NYSHRL and NYCHRL do not require exhaustion of administrative remedies."  *Brock v. Prime Now LLC*, No. 20 Civ. 9055 (VEC) (OTW), 2021 WL 4267849, at *4 n.7 (S.D.N.Y. Aug. 26, 2021) (citing *Medina v. Waste Connections of New York, Inc.*, No. 19 Civ. 291 (RA), 2019 WL 3532048, at *5 n.6 (S.D.N.Y. Aug. 2, 2019)).[8]

Accordingly, Udoh's Title VII sex discrimination claim and any Title VII retaliation claim made in relation to sex-based discrimination must be dismissed.

### C.  Disability Claims

### 1.  Disability Discrimination

The Court finds that Udoh failed to state a claim of disability discrimination under the ADA, RA, NYSHRL, and NYCHRL.  A disability discrimination claim is evaluated using the same standard for each of these statutes.  *See Walker v. City of New York*, 367 F. Supp. 3d 39, 51 n.7 (S.D.N.Y. 2019) ("[C]laims under the ADA and the [RA] are evaluated using the same standards"); *Jernigan v. Dalton Management Co., LLC*, 819 F. Supp. 2d 282, 288 (S.D.N.Y. 2011) ("In this Circuit, a disability-based discrimination claim under the NYSHRL and NYCHRL involve the 'same elements' as an ADA claim.") (quoting *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010)).  Thus, to establish a *prima facie* case of discrimination under the ADA, RA, NYSHRL, and NYCHRL, a plaintiff must demonstrate that:  (1) his employer is subject to the [statutes]; (2) he is disabled within the meaning of the [statutes]; (3) he is otherwise qualified to

---

[8] Although the Defendants do not make the argument, because Udoh initially brought a charge with the DHR, it would seem that his claims pursuant to the NYSHRL and NYCHRL would be subject to the election of remedies bar.  Regardless, as the Court discusses below, the disability, religion, and sex discrimination claims all fail on the merits.

perform the essential functions of his job with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *Garcia v. Kings County Hospital Center*, No. 16 Civ. 3151 (ER), 2018 WL 389212, at *4 (S.D.N.Y. Jan. 11, 2018) (citing *Rios v. Department of Education*, 351 Fed. App'x. 503, 505 (2d Cir. 2009)).

Udoh has failed to show that he has a qualifying disability pursuant to the ADA, RA, NYSHRL, or NYCHRL.  To plausibly state a claim of disability discrimination under the ADA or RA, a person must show they have "an actual 'physical or mental impairment that substantially limits one or more major life activities,' or . . . [that] she is 'regarded as having such an impairment' or [that] there otherwise is a 'record of such an impairment.'" *Johnson v. Mount Sinai Hospital Group, Inc.*, No. 23-466, 2024 WL 3289475, at *1 (2d Cir. July 3, 2024) (quoting 42 U.S.C § 12102(1)(A)-(C)).  Udoh's complaint only makes vague, conclusory references to "medical conditions," "medications," "medical reasons," and "medical issues," Doc. 1 at 4, 9, 11, 12, 13, but a "medical condition alone, even a serious one, is not a *per se* disability under the ADA; it must substantially limit a major life activity."  *Pagan v. Morrisania Neighborhood Family Health Center*, No. 12 Civ. 9047 (WHP), 2014 WL 464787, at *4 (S.D.N.Y. Jan. 22, 2014).  Udoh has failed to plausibly show that his medical conditions substantially limit any major life activities.  "[A] plaintiff must do more than proffer 'conclusory statements' to adequately assert a substantial limitation for the purposes of stating a claim under the ADA and RA."  *Dominguez v. Board of Education of Yonkers City School District*, No. 23 Civ. 2460 (NSR), 2025 WL 1285862, at *4 (S.D.N.Y. May 2, 2025).

While the NYSHRL and NYCHRL do not require "any showing that the disability substantially limits a major life activity," even under those statutes which "have a broader definition of 'disability' than does the ADA," Udoh fails to show a plausible

qualifying disability. *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 541 (S.D.N.Y. 2009).

The NYSHRL defines "disability" as:

> (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held.

New York Executive Law § 292(21). The NYCHRL defines disability as "any physical, medical, mental or psychological impairment, or a history or record of such impairment." New York City Administrative Code § 8-102.

Even under these broader definitions, the mere mention of a "medical condition" is not enough. *See Karupaiyan v. CVS Health Corp.*, No. 19 Civ. 8814 (KPF), 2021 WL 4341132, at *19 (S.D.N.Y. Sept. 23, 2021) ("[V]ague references to pain and difficulty, untethered to any underlying condition or impairment, do not make out a claim under these statutes"); *see also Lee v. Delta Air Lines, Inc.*, No. 22 Civ. 08618 (DEH) (RWL), 2024 WL 3928876, at *20 (S.D.N.Y. July 29, 2024), Report and Recommendation rejected in part by *Lee v. Delta Air Lines, Inc.*, No. 22 Civ. 8618 (DEH) (RWL), 2025 WL 4367257 (S.D.N.Y. Aug. 29, 2024) (holding that plaintiff's general references to her disabilities failed to show they actually had any of those disabilities under the NYSHRL and NYCHRL).

And to the extent that Udoh asserts additional information to bolster his disability discrimination claim in his opposition to the motion, Udoh still fails to show he has a qualifying disability. Specifically, he alleges that the "causes and effects from the job" led him to suffer high blood pressure, chest pain, back pain, anxiety, panic attacks, physical disability, emotional distress, mental abuse, and cardiac issues, "all because . . .

they subjected [him] to[] discrimination, harassment, and [a] hostile workplace environment."  Doc. 30 at 15.  Again, that is not sufficient to establish a qualifying disability.  *See, e.g.*, *Lee v. Sony BMG Music Entertainment, Inc.*, 557 F. Supp. 2d 418, 425 (S.D.N.Y. 2018)  ("[M]ental and/or physical fallout from the discrimination that was allegedly practiced against [a plaintiff] does not give rise to an independent claim for disability discrimination[.]"; *Lenhoff v. Getty*, No. 97 Civ. 9458 (LMM), 2000 WL 977900, at *7 (S.D.N.Y. July 17, 2000) ("[J]ob-induced stress cannot be considered a disability under the NYSHRL or NYCHRL."); *Davis v. Carty*, No. 24 Civ. 6674 (LTS), 2025 WL 843709, at *3 (S.D.N.Y. Mar. 13, 2025) (holding that a plaintiff alleging that her employment "caused . . . her disability (depression and anxiety) . . . does not state a claim under the Rehabilitation Act.").

And neither has Udoh made any plausible showing that he was "regarded as having such an impairment" or that there was a "record of such an impairment." Accordingly, Udoh cannot show a plausible qualifying disability pursuant to the ADA, RA, NYSHRL, and NYCHRL.

## 2.  Failure to Accommodate

Even if he had adequately alleged that he had a disability, Udoh has failed to plead a failure-to-accommodate claim pursuant to the ADA, RA, NYSHRL, and NYCHRL.  To make out a prima facie failure-to-accommodate claim under the ADA, a plaintiff must demonstrate that:  (1) [p]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.  *Vega v. Department of Education*, No. 19 Civ. 6963 (ER), 2020 WL 6727803, at *5 (S.D.N.Y. Nov. 16, 2020) (quoting *McBride v. BIC Consumer Products Manufacturing Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009)).  This standard is the same under the RA, NYSHRL, and NYCHRL.  *See Lawtone-Bowles v. City of New York*, No. 17 Civ. 8024, 2019 WL

652593, at *6 (S.D.N.Y. Feb. 15, 2019) ("Courts apply the same standard for failure to accommodate cases under the ADA, Rehabilitation Act, NYSHRL, and NYCHRL.") (citing *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999)); *see also Torres v. MMS Group, LLC*, No. 22 Civ. 6142 (DEH), 2024 WL 3274310, at *3 (S.D.N.Y. July 2, 2024) ("The elements necessary to state [a failure-to-accommodate] claim under . . . the ADA . . . RA, NYSHRL, and NYCHRL are substantially the same.").

　　As noted by the DOP, Udoh "pleads none of the elements required to overcome a motion to dismiss." Doc. 26 at 22. Udoh's mention of "medical conditions" fails to qualify as a disability within the definitions of the relevant statutes. And neither has Udoh shown that the DOP had notice of any purported disability. The only plausible inference that may be made is that he gave them notice of his "medical conditions" when asking for a "late lunch," and yet that still fails to lift his claim to the level required to adequately plead a claim for failure-to-accommodate. *See Karupaiyan*, 2021 WL 4341132, at *19 (a "[p]laintiff's vague assertion of a need to attend an unquantified number of medical appointments, for an unspecified purpose, and for an uncertain duration cannot be viewed as putting [d]efendants on notice of a disability requiring accommodation under any of the ADA, the NYSHRL, or the NYCHRL."). "[F]ailure to provide notice of [a] disability to [defendants] or to allege some other means by which they might have had an opportunity to consider her need for accommodations is fatal to [plaintiff's] claim." *Castillo v. Hudson Theatre*, *LLC*, 412 F. Supp. 3d 447, 451 (S.D.N.Y. 2019). Accordingly, Udoh has failed to plausibly allege a failure-to-accommodate claim and Defendants' motion to dismiss Plaintiff's claims for failure to accommodate are granted.

### D. Religious Discrimination

　　Udoh next claims that he suffered discrimination on the basis of his religion because the DOP failed to accommodate his "African religion fasting and practices." Doc. 1 at 10. The Court finds that Udoh failed to sufficiently plead a claim for religious

discrimination.  When making a claim for religious discrimination pursuant to Title VII through a failure to accommodate, a plaintiff must show that:  (1) he had a bona fide religious belief conflicting with an employment requirement; (2) he informed his employer of this belief; and (3) was disciplined for failing to comply with the employment requirement.  *Cagle v. Weill Cornell Medicine*, 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023) (citing *Knight v. Connecticut Department of Public Health*, 275 F.3d 156, 167 (2d Cir. 2001)).  To bring a claim of disparate treatment on the basis of religion pursuant to Title VII, a plaintiff must demonstrate that:  (1) he is a member of a protected class; (2) he is qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.  *Green v. Jacob & Co. Watches, Inc.*, 248 F. Supp. 3d 458, 468 (S.D.N.Y. 2017) (quoting *Vega v. Hempstead Union Free School District*, 801 F.3d 72, 83 (2d Cir. 2015)).  And finally, to bring a discrimination claim on the basis of religion pursuant to the NYSHRL and NYCHRL, a plaintiff must "'show differential treatment—that he was treated less well— because of a discriminatory intent."  *Livingston v. City of New York*, 563 F. Supp. 3d 201, 234 (S.D.N.Y. 2021) (internal quotations omitted); *see also Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 106–07 (S.D.N.Y. 2024) ("[T]he standards for employment-discrimination claims under the NYSHRL and NYCHRL are now largely the same.").

Udoh fails to adequately plead discrimination on the basis of his religion under any of these standards.  The only mention of religion in his complaint was that he had requested that the DOP "accommodate [his] African religion fasting and practices," and that it was denied.  Doc. 1 at 10.  For a failure to accommodate, "[b]ald allegations that a plaintiff has a religious belief and that those religious beliefs conflict with an employment requirement are insufficient to state a claim for religious discrimination under Title VII."  *Cagle*, 680 F. Supp. 3d at 435.  The complaint does not sufficiently allege a failure to accommodate claim because Udoh neither "allege[s] any non-

conclusory facts about [his] religious beliefs," nor alleges that his beliefs "conflict with [a] requirement." *Id.*

The same is true for any potential claims of disparate treatment. Not only does Udoh fail to describe his "religion," or "religious beliefs," but he also fails to establish that he suffered an adverse employment action or that he was treated "less well" *because of* his religion. As such, his claim for discrimination on the basis of his religion fails. *See Karupaiyan*, 2021 WL 4341132, at *20 (dismissing plaintiff's Title VII, NYSHRL, and NYCHRL religious discrimination claim because they failed to "provide any additional evidence, direct or circumstantial, to suggest that he was terminated because he was Hindu."); *see also Ochei v. The Mary Manning Walsh Nursing Home Co., Inc.*, No. 10 Civ. 2548 (CM) (RLE), 2011 WL 744738, at *3 (S.D.N.Y. March 1, 2011) ("[N]aked assertions by plaintiff that some protected demographic factor motivated an employment decision, without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's membership in a protected class, are simply too conclusory to withstand a motion to dismiss.") (citing *Reyes v. Erickson*, 238 F. Supp. 2d 632 (S.D.N.Y. 2003)). Accordingly, Defendants' motions to dismiss Plaintiff's claims for religious discrimination are granted.

### E. Sex Discrimination

The Court finds that Udoh has also failed to adequately plead a claim for sex discrimination. To survive a motion to dismiss, a plaintiff must establish a Title VII sex discrimination claim by showing that: (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Menaker v. Hofstra University*, 935 F.3d 20, 30 (2d Cir. 2019) (quoting *Walsh v. New York City Housing Authority*, 828 F.3d 70, 75 (2d Cir. 2016)). For a claim brought pursuant to the NYCHRL, the plaintiff "need only 'show differential treatment— that he was treated less well—because of a discriminatory intent." *Livingston*, 563 F.

Supp. 3d at 234.  NYSHRL claims are also analyzed under this standard.  *See Moore v. Hadestown Broadway Limited Liability Co.*, 722 F. Supp. 3d 229, 245 (S.D.N.Y. 2024) ("Courts must now scrutinize discrimination claims brought pursuant to the NYSHRL under the same lenient pleading standard described above under which NYCHRL discrimination claims are analyzed.").

Udoh has not "nudged" his sex discrimination claim "across the line from conceivable to plausible[.]"  *Twombly*, 550 U.S. at 570.  The only allegations Udoh makes in regards to his sex discrimination claim is that a "female young officer under the age of 40 took [his] office the day [he] was asked to return all his equipment."  Doc. 1 at 10.  That allegation, without more, is not sufficient to make up a plausible sex discrimination claim pursuant to Title VII, NYSHRL, or NYCHRL.  There is nothing to show or even give rise to the inference that he was terminated, replaced or treated "less well" *because of* his sex.  While true that "an inference of discrimination may arise when an employer replaces a terminated employee with an individual outside the employee's protected class," such an inference should not be made in isolation, and instead must include an analysis of "whether the 'factual content' in a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Franchino v. Terence Cardinal Cook Health Care Center, Inc.*, 692 F. App'x 39, 43 (2d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678); *see also Marcus v. Leviton Manufacturing Co., Inc.*, 661 F. App'x 29, 33 (2d Cir. 2016) ("Without more, the mere fact that a [member of a protected class] was replaced by [someone outside the protected class] does not plausibly indicate discriminatory motive.").  As the DOP points out, neither does Udoh allege that the female probation officer "replaced him, just that she took his office," "leav[ing] open the very plausible possibility that she was just taking over his former office space and had already been employed by [the DOP]."  Doc. 26 at 25.  Udoh's sex discrimination claim has not crossed the line from conceivable to plausible.  Accordingly,

Defendants' motions to dismiss Plaintiff's claims for sex discrimination are granted in their entirety.

### F. Fourteenth Amendment

The Court finds that Udoh did not adequately plead a Fourteenth Amendment claim. To sustain a Due Process claim, a plaintiff must: (1) identify a property right; (2) show that the state has deprived him of that right; and (3) show that the deprivation was effected without due process. *Salemo v. Murphy*, No. 11 Civ. 2525, 2014 WL 804029, at *4 (S.D.N.Y. Feb. 28, 2014) (citing *Local 342, Long Island Public Service Employees, UMD, ILA, AFL-CIO v. Town Board of the Town of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994)). Thus, Udoh must establish that he possessed a property interest in his continued employment as a probationary officer. He has failed to do so.

In their memorandum of law in support of their motion, the DOP asserts that Udoh is a "*probationary* [p]robation [o]fficer." Doc. 26 at 27. Udoh does not contest that claim in his opposition to the DOP's motion. In this Circuit, "[p]robationary or at-will employees lack a 'legitimate claim of entitlement,' and therefore lack a property interest in the expectation of continued employment." *Fitzgerald v. Feinberg*, No. 98 Civ. 8885 (RWS), 1999 WL 619584, at *3 (S.D.N.Y. Aug. 16, 1999) (quoting *Donato v. Plainview-Old Bethpage Central School District*, 96 F.3d 623, 629 (2d Cir. 1996)); *see also Catania v. United Federation of Teachers*, No. 21 Civ. 1257 (GHW), 2025 WL 638625, at *9 (S.D.N.Y. Feb. 27, 2025) ("Under New York law, it is well settled that a probationary employee, unlike a permanent employee, has no property rights in his position and may be lawfully discharged without a hearing and without any stated specific reason.") (quoting *Finley v. Giacobbe*, 79 F.3d 1285, 1297 (2d Cir. 1996)). As a probationary employee, Udoh does not a have a property interest in his position, and as such, any potential Due Process claim must be dismissed.

Furthermore, "[t]o plead discrimination in violation of the Equal Protection Clause, a plaintiff must 'point to a law or policy that expressly classifies persons on the

basis of race,' 'identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner,' or 'allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus.'" *Velasquez v. City of New York Department of Buildings*, No. 19 Civ. 9687 (PKC), 2020 WL 2614826, at *3 (S.D.N.Y. May 22, 2020) (quoting *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000)). As the DOP points out, Udoh has not pointed to a statute or policy that was discriminatory. Doc. 33 at 18. Accordingly, Defendants' motion to dismiss Udoh's Fourteenth Amendment claims is granted.

### G. Whistleblower Protection Act

Udoh also alleges a Whistleblower Protection Act Claim. Doc. 1 at 12. Assuming he is bringing a claim pursuant to the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8)-(9) ("WPA"), Udoh has failed to adequately plead the claim. "The Civil Service Reform Act of 1978 ("CSRA"), as amended by the WPA, 'governs claims for retaliation against whistleblowing activities brought by *federal employees* against their federal employers.'" *Chinniah v. Federal Energy Regulatory Commission*, No. 18 Civ. 8261 (VSB), 2022 WL 392904, at *4 (S.D.N.Y. Feb. 9, 2022) (emphasis added) (quoting *Ghaly v. United States Department of Agriculture*, 228 F. Supp. 2d 283, 288 (S.D.N.Y. 2002)). Udoh was not a federal employee—he was an employee of the City of New York. The WPA does not apply here. Defendants' motion to dismiss Udoh's WPA claim is granted.

### H. Liability of Individual Defendants

Even if Udoh could adequately plead the above claims or bring them before the Court, most of those claims cannot be brought against individual defendants. This District has long held that Title VII does not "provide for individual liability against the agents of an employer, including individuals who hold supervisory responsibilities." *Blige v. City University of New York*, No. 15 Civ. 8873 (GBD) (KHP), 2017 WL 498580, at *8 (S.D.N.Y. Jan. 19, 2017) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–14 (2d Cir.

1995)); *see also Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (summary order) (holding that Title VII does not subject "individuals, even those with supervisory liability over the plaintiff, to personal liability.").

This is true for claims pursuant to the ADA and the RA as well. *See Williams v. Dudley*, No. 23 Civ. 11018 (JPC) (RFT), 2025 WL 1042336, at *3 (S.D.N.Y. Feb. 27, 2025), *report and recommendation adopted in part, rejected in part by Williams v. Dudley*, No. 23 Civ. 11018 (JPC) (RFT), 2025 WL 842896 (S.D.N.Y. Mar. 18, 2025) ("[I]ndividual defendants with supervisory control over a plaintiff may not be held personally liable under the ADA for employment discrimination.") (citing *Givens v. City of New York*, No. 11 Civ. 2568 (PKC) (JCF), 2012 WL 75027, at *4 (S.D.N.Y. Jan. 10, 2012)); *Lovallo v. New York City Department of Education*, No. 23 Civ. 834 (MKV), 2024 WL 1329793, at *5 (S.D.N.Y. Mar. 27, 2024) (holding that the RA does not "subject[] individuals, even those with supervisory liability over the plaintiff, to personal liability.") (citing *Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022)), *cert. denied sub nom. Goe v. McDonald*, 143 S. Ct. 1020 (2023)). And insofar as Udoh raises Fourteenth Amendment claims against the individual defendants, those must be dismissed as he has failed to allege any facts sufficient to support the claim that they violated his Fourteenth Amendment due process or equal protection rights. As such, all Title VII, ADA, RA and Fourteenth Amendment claims brought against Natasha Segers, Maryann Brown, and Lisa D'Ambrosia must be dismissed.

Furthermore, "the NYSHRL and the NYCHRL impose liability on individuals only where they are 'personally involved' or 'actually participated' in the alleged violations." *Telfair v. Le Pain Quotidien U.S.*, No. 16 Civ. 5424 (PAE) (GWG), 2017 WL 1394384, at *2 (S.D.N.Y. Mar. 8, 2017) (collecting cases). Udoh has presented no evidence which implicates D'Ambrosia in any of the discriminatory conduct alleged in his complaint. The only mention of D'Ambrosia in the complaint establishes that he met D'Ambrosia on his first day, that he told her he was only sent there temporarily, and that

she informed him he would first go to the intake unit and then to client development. Doc. 1 at 8. And in his opposition, Udoh alleges that "[D'Ambrosia] was one of the people who caused the Plaintiff's termination and reputable harm," but those allegations are purely conclusory. Doc. 30 at 4. Accordingly, all of the claims against Defendant D'Ambrosia must be dismissed. *See Neiblas-Love v. New York City Housing Authority*, 165 F. Supp. 3d 51, 76 (S.D.N.Y. 2016) (dismissing NYSHRL and NYCHRL claims against a defendant because "[p]laintiff produces no evidence linking [defendant] to his termination" or "implicat[ed] [defendant] in any discriminatory acts that contributed to a hostile work environment"); *see also Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 309 (S.D.N.Y. 2015) (a Plaintiff must "prove at least some minimal culpability on the part of [defendants].").

Accordingly, Defendants' motion to dismiss the Title VII, ADA, RA and Fourteenth Amendment claims against each individual defendant, as well as the NYSHRL and NYCHRL claims against D'Ambrosia is granted in its entirety.

## IV.    CONCLUSION

For the reasons stated above, Defendant's motion to partially dismiss the complaint is GRANTED in part and DENIED in part. The parties are directed to appear for a conference on August 11, 2025 at 11 a.m., in Courtroom 619 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007. The Clerk of Court is respectfully directed to terminate the motion, Doc. 26.

It is SO ORDERED.

Dated:    August 1, 2025
          New York, New York

_____
        EDGARDO RAMOS, U.S.D.J.